# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CHARLES D. OLINGER, SR.,       )
                               )
      Plaintiff,          )
                               )
v.                             )    Case No. CIV-15-42-SPS
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of the Social )
Security Administration,       )
                               )
      Defendant.          )

## OPINION AND ORDER

The claimant Charles D. Olinger, Sr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born January 14, 1958, and was fifty-six years old at the time of the administrative hearing (Tr. 37). He completed the twelfth grade, and has previously worked as a sign installer and traffic signal repairer (Tr. 26, 232). The claimant alleges that he has been unable to work since April 24, 2012, due to two previous neck surgeries and having four discs fused (Tr. 176).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on October 9, 2012. His application was denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 28, 2014 (Tr. 18-28). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c), *i. e.*, he could lift and carry fifty pounds occasionally or twenty-five pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday, and he could push and pull as much as he could lift and carry, but that he was limited to no overhead reaching bilaterally. Additionally, the ALJ determined that the claimant

could never climb ladders or scaffolds or perform any crawling, could not work around unprotected heights or moving mechanical parts, was limited to occasional operation of a motor vehicle, and he must avoid any environments with temperature extremes. Finally, the ALJ found that the claimant was limited to performing routine and repetitive tasks, making simple work-related decisions, and that he would be off task for five percent of the workday (Tr. 21). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, laundry worker I, hand packer, and dining room attendant (Tr. 26-27).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the opinion of his treating physician Dr. Joe Voto, and (ii) by failing to properly assess his credibility. The Court finds the claimant's first contention persuasive.

The ALJ determined that the claimant had the severe impairment of cervical disc disease with radiculopathy (Tr. 20). The relevant medical evidence reflects that the claimant underwent a cervical spine fusion at C4-7 in 2009 (Tr. 41). On August 1, 2012, the claimant underwent an anterior cervical discectomy spacer and plating procedure at C3-4 (Tr. 342-343). He continued to complain of neck pain, and was then referred to Dr. Voto for pain management, who treated the claimant from October 2012 through at least August 2013, for diagnoses of cervical disc disease, cervical radiculopathy, cervical pain, and chronic pain syndrome (Tr. 272, 297-304). Records from Dr. Voto reflect that, upon examination, the claimant generally had a negative Spurling's test, no deformities,

normal reflexes and sensations, no vertebral spine tenderness, and no paraspinal muscle spasm, but that he did have decreased range of motion in all directions of the neck, due to the two previous fusion surgeries (Tr. 298). Dr. Voto administered a cervical medial branch nerve block in October 2012 and the claimant reported a 50% reduction in pain in December 2012, but then reported a return of pain in January 2013 (Tr. 405-407). The record further reflects that Dr. Voto adjusted the claimant's pain medication several times and the claimant would report some improvement initially, but then later report that the medications were no longer helping (Tr., *e. g.*, 409-411). In May 2013, the claimant reported increased pain in his neck and down his arms, as well as numbness in his right hand (Tr. 413). By August 2013, one of the claimant's other treating physicians, Dr. Alvis, had informed him that he would likely need another cervical fusion surgery, but the claimant was trying to avoid a third surgery (Tr. 439). By the time of the claimant's administrative hearing in March 2014, the claimant had had two failed experiences with a spinal cord stimulator for relieving his pain (Tr. 48, 446).

Dr. Voto completed a "Medical statement regarding cervical spine disorders for Social Security disability claim" for the claimant on May 15, 2013 (Tr. 442). He indicated that the claimant had limitation of the motion of the spine and would need to change position more than once every two hours. Additionally, he indicated that the claimant suffered from severe pain, and circled both that the claimant could work two hours per day and four hours per day (Tr. 442). He further indicated that the claimant could stand two hours at a time, sit ten minutes at a time, lift twenty pounds occasionally and ten pounds frequently, but had a limited extent of movement with regard to rotating

the neck to the right, rotating the neck to the left, elevating the chin, and bringing the chin to the neck (Tr. 442).

Prior to Dr. Voto's March 2013 opinion, two state reviewing physicians found that the claimant could perform a full range of medium work, with unlimited pushing and pulling, and no other limitations (Tr. 83-93).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the

treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Here, the ALJ summarized the claimant's testimony as well as the medical record (Tr. 21-26). He then found that Dr. Voto's findings were "not strongly adverse," and that they supported a finding of a limited range of medium work because: (i) the cervical spine showed no visible deformity and only mild tenderness to palpation; (ii) even though range of motion was limited, neurological examination showed normal reflexes and sensation to light touch, as well as full strength in all major muscle groups; (iii) there was no other vertebral spine tenderness and no edema in his extremities; (iv) a Spurling's test was negative; and (v) there was no paraspinal muscle spasm (Tr. 24). He then found the claimant not credible, and assigned the state reviewing physician's opinion "significant weight," but with the additional limitations based on the claimant's "mental symptoms from his medications and pain" (Tr. 25). Furthermore, he stated that he gave "some additional weight to Dr. Voto's opinion and the claimant's subjective allegations" (Tr. 25). He then specifically assigned "partial weight" to Dr. Voto's opinion, finding that it was not consistent with his treating notes because they "only" showed limitation of motion of the spine and mild tenderness to palpation, he did not explain his answers in narrative format, and "there is no indication in the treatment record that Dr. Voto ever[] established limitations for treatment purposes other than this form" (Tr. 25). He did, however, note that the treatment records did not reflect an inability to perform fine and gross movements (Tr. 26).

The ALJ's opinion here reflects that he failed to properly assess Dr. Voto's opinion as a treating physician. The Commissioner proffers the arguments that the ALJ's limited medium RFC assessment was appropriate because: (i) the claimant was given a reduced medium RFC in 2010 (two years prior to the alleged onset date), (ii) two reviewing (nonexamining) physicians found the claimant could perform the full range of medium work after reading his treatment notes, and (iii) focused examination of the claimant's cervical spine and neck were "essentially normal." However, the Court declines to assess these *post hoc* rationales. *See Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Furthermore, the ALJ only gave weight to Dr. Voto's findings related to fine and gross manipulation, but gave no consideration for the repeated statements related to the claimant's limited range of motion of the neck in all directions, nor did he explain why such a finding was omitted. Indeed, there is no explanation for how any of the limitations placed in the claimant's assigned RFC reflect his severe impairment of cervical disc disease with radiculopathy, nor how the RFC accounts for the documented reduced range of motion. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

This is particularly important where, as here, the ALJ adopted the state physicians' findings related to medium work (that pre-dated the opinion of the claimant's treating physician), but failed to explain why the claimant's documented reduced range of motion of the neck and continued neck pain nevertheless enabled him to perform medium work, including both the lifting/carrying restrictions and the ability to sit/stand/walk up to six hours in an eight-hour workday. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**